ELIZABETH W. STEVENS, administratrix, etc., in equity, *vs.*
ALEXANDER BURGESS and others.

*Trusts under a will—construction of.*

Where the income of all real estate is devised to the widow, she is entitled to that accruing from subsequently purchased land; this going to her under such devise instead of to the residuary legatees.

If land of which the income is devised be unproductive, the executor will not be authorized to expend any of the funds devised to the residuary legatees in an attempt to make it produce an income.

The executor, having no special authority by the will to sell the real estate, cannot make sale of it without the consent of the residuary legatees, or license from this court, which will not be granted where the personal assets are amply sufficient to pay the debts and meet all the calls of the will.

Stevens *v.* Burgess.

A bequest is payable presently unless some other time be specially fixed for pay-. ment. The executor has no authority to pay from the general funds of the estate the expenses of taxes, repairs, etc., upon real estate devised in trust and in the occupancy of the widow as *cestui que trust;* nor is any part of such expenditures to be borne by the trust to which the proceeds of such real estate are eventually to be devoted. The occupant must pay them.

A person to whom a specific sum, being not more than one-seventh of the whole estate, is devised for particular purposes, must give the bond required of testamentary trustees by R. S., c. 68, § 1, before he can receive such sum; though he be charged with no other trust than its reception and expenditure, to accomplish the desired end, "at his discretion."

A bequest evidently incomplete is void.

A bequest of "one-third of the personal property" conveys that fraction of it in gross, without any deduction for payment of debts, etc.

BILL IN EQUITY.

This is an amicable bill brought to obtain a construction of the will of late J. Ignatius Stevens, by his widow and administratrix, with the will annexed, the executor named therein declining the trust.

The widow is in the occupancy of the two parcels of real estate named in the third clause of the will. Counsel stated that the Ring farm was probably purchased after the will was made. The case was heard upon the statements of the bill without answer, and no other proofs than the will and codicil, the material parts of which are below stated. By the inventory of the estate as returned to the probate court, the property and assets appear to be as follows:

|  |  |  |
|---|---:|---|
| Real estate— | | |
| Dwelling-house and lot, Gorham, | $2,500 | 00 |
| Lot "opposite" the house, | 1,000 | 00 |
| Ring farm in Gorham, | 2,000 | 00 |
| Total real estate, | $5,500 | 00 |
| Personal estate— | | |
| Goods and chattels, | 684 | 05 |
| Rights and credits available, | 17,831 | 56 |
|  | $18,515 | 61 |

The general administration of the estate was commenced in the year 1869, after the determination of an appeal taken upon a contestation of the will.

The complainant further states that the dwelling-house and appurtenant buildings on the dwelling-house lot are quite old, and have required since the decease of the testator large outlays for repairs ; and that the amount likely to be required hereafter to be expended annually for repairs, insurance, and taxes on the same, is more than the current use and value of the premises to a life-tenant.

She further states that the lot opposite the house is a parcel of orchard and tillage land, of about ———— acres only, and is of very small annual value for any purposes to which it can be devoted under the testamentary conditions now in question.

The complainant supposes, according to her present information and belief, that all the direct money bequests and specific legacies of the will can be fully paid out of the personal property, or out of real estate specifically applicable thereto, without any other resort to the realty, and that the Ring farm will eventually fall to the residuary legatees. But she says that this cannot certainly be known in the present stage of the administration and during the pendency of the questions sought to be solved in the present proceeding. Meanwhile she says that the Ring farm is of such character as to soil, and in such unimproved condition that it cannot, without much difficulty and expense, be made to yield any net returns in the present state of the title,—it appearing, as the complainant is advised, that the eventual right of the residuary legatees may be subject to an intervening life-estate in the widow. And the complainant alleges that it will be for the interest of all concerned that the Ring farm be sold under a decree of this court in the present proceeding, if the same can lawfully be done, and she prays that the court will inquire thereon and make such decree, and order the proceeds of the sale of the same to be held and applied as the interests of the several parties who may be entitled therein shall require.

And thereupon, as she is advised, the complainant respectfully states the following inquiries, for interpretation and instructions to be given by the court.

1. Whether under the third and fourth clauses of the will, and the third clause of the codicil, the widow, as such, takes any interest in the Ring farm, or is entitled to any income from the same?

2. Whether the plaintiff, in her capacity as administratrix, is entitled and required to make any expenditures from the general funds of the estate, for the purpose of carrying on or improving the Ring farm, or in attempting to obtain productive income from the same, whether for the use of the widow, or for the use of those entitled in the residuary?

3. Whether, pending the settlement of the estate, the objects and purposes of the will, in respect to the persons who may be determined to be beneficially interested in the Ring farm, can be effected and carried out by a sale of the farm, and the investment of the proceeds for the use of those entitled? And whether the court can effect such objects by a decree in the present cause, with or without the consent of the residuary legatees?

4. Whether the bequest of $3,500 made in the fourth clause of the codicil, to the Rev. Alexander Burgess (who is also a residuary legatee, and one of the defendants), is payable presently out of the general money funds of the estate, or is only to be realized and paid hereafter out of the sale of the real estate mentioned in the third clause?

5. Whether the administrator of the will is authorized, under the third clause of the codicil, to provide out of the general funds of the estate for the payment of taxes, repairs, and insurance on the real estate, mentioned and devised in trust by that clause, or for any part of the same?—the plaintiff praying, that if it shall be so held, the court will advise and instruct her how much may be so applied, and what part of the capital of the estate may be set aside and held as a trust fund to supply the means of defraying such charges?

6. Whether, under the true construction of the will, any part of

such charges can be required to be borne by the trust, to which the proceeds of the said real estate are eventually to be devoted ?

7. Whether in case it shall be adjudged that the said legacy of $3,500 to Rev. Alexander Burgess is payable presently, the plaintiff will be authorized to pay the same to him, until by proceedings in the probate court he shall be qualified as a trustee to accept the same ?

8. Whether the second clause of the codicil is of any effect? And if any, what is the legal interpretation of the same ?

9. Whether, under the third clause of the will, the widow is entitled to one-third of the gross personal property which the testator owned at the time of his decease, or only to one-third of the net personal, after the payment of debts and charges of administration? And whether, in either case, one-third of the chattel property or one-third of its money value is to be taken, to make the whole third given to the widow ?

### COPY AND ABSTRACT OF THE WILL.

[Parts within quotation marks are literal copies.]

### PREAMBLE.

1. . . . " I will my body to be buried in my own lot, in the grave-yard in the town of Gorham." . . .

2. Directs payment of debts. "And I desire my executor to have erected and placed in my lot and over my body, a monument of as large a size as can be procured for five hundred dollars, and I hereby bequeath that sum to him for that purpose. A design for this monument, with inscription and epitaph, will be found with my effects in the iron safe. I desire that after my burial in my own lot, and my wife, if she shall so desire, no other person may be there buried forever after."

3. " To my wife, Lizzie W. Stevens, I give and bequeath one-third of all the personal property of which I may die possessed, and the income of one-third of all the real estate which I may own at the time of my decease, except as specified in the next article."

4. " To my wife, Lizzie W. Stevens, I devise and bequeath the use of my house and the lot on which it stands, and the use of the furniture, pictures, curiosities, glass, tools, nautical instruments, charts, maps, books, chronometers, watches, silver plate, diplomas, family records, liquors, stuffed birds, urns, vases, clocks, and all other things belonging to me, in the house at the time of my death, except the iron safe with its contents, so long as she shall remain a widow, any of which articles can be used at her discretion, but not to remove any of them from the house, and leave the house and things in the good order in which they now are, except such articles as are hereinafter mentioned."

5. Relates to a previously deceased son.

6. *Revoked.* Devise to executor in trust, of a lot of land, part of lot " opposite my house," and a sum of money, for the objects of a church to be there erected.

7. *Revoked.* Devise to executors his dwelling-house and lot in trust, first for his wife during widowhood, as above provided ; second, then to convey it to a religious society to be formed, and if no such society, to rent it, and apply the income to charitable and religious objects named.

8. *Revoked.* · " For the purpose of carrying out my intentions, as expressed in the preceding articles," gives to executor two thousand dollars in trust. " 1st, to keep the iron fence around my grave-yard lot in good repair, and the monument and grave-stones in their proper places, and the lot and graves therein from being desecrated forever. 2d, to pay the taxes on my house and lot, to keep the house insured properly, and tightly shingled, painted, and the underpinning painted, the windows glazed and blinded, in fine, to keep the house in the same general state of repair in which it now is, and the fences also in good order." 3d, provides for rebuilding if the house shall be burned, and when the house shall be conveyed, as provided in article seventh. The fund of two thousand dollars, as provided in this article ("except the sum of five hundred dollars") shall be paid over to a parish named. " But said sum of five hundred dollars shall be retained and held by my

executor in trust for the purpose named in the first item of this article."

9. *Revoked.* In case no society shall be formed as contemplated in the sixth article, the executors to sell the lot and pay over the proceeds to a parish named.

Clauses from 10 to 15 were bequests to charitable and scientific societies, and to several individuals, of money and chattels; the eleventh being for the support of a school at Hull's Cove, Mount Desert.

16. If the executor shall decline or resign, " and at his death, I desire that his successor shall be appointed by the judge of probate for the county of Cumberland, and so on forever, when any vacancy happens in the execution of said trust."

17. *Revoked.* Bequest of residuary.

18. Appoints William Hammond " the executor of this will, and trustee under its provisions," with a personal legacy to him.

In testimony whereof, etc., Aug. 24, 1866.

COPY AND ABSTRACT OF THE CODICIL.

[Parts within quotation marks are literal copies.]

PREAMBLE.

1. Revokes articles six, seven, eight, nine, so much of article fifteen as relates to an individual legatee there named, and article seventeen, of the will.

2. " I bequeath to my executor, and his successor as a trustee, the sum of five hundred dollars, the income to be applied to keep the iron fence around my " (so ends in the original).

3. " I give and bequeath to my executor the house in which I live, and the lot on which it stands, and the lot of land opposite my house, extending to Fort Hill road, to him and his successor, to be held in trust for the use of my wife, Lizzie W. Stevens, in lieu of dower, as long as she shall remain my widow, and then to be sold to the best advantage by him, and the proceeds disposed of as provided in the next article."

4. " I bequeath to Rev. Alexander Burgess, D. D., late pastor of Saint Luke's Parish, in Portland, the sum of three thousand five hundred dollars; for the following purposes:

" First. One thousand dollars to be invested by him, the income of which to be applied in alms to the poor of St. Luke's Parish aforesaid.

" Second. One thousand dollars to be paid over by him to the Bishop of the Diocese of Maine (Episcopal), to be held by him and his successor, and the income applied at his discretion for some Episcopal clergyman to perform divine services in the school-house erected and presented by me to Hull's Cove school district, Mount Desert, at such times in the year as may be practicable and desirable.

" Third. The residue, together with the proceeds of the sale of my house and the lot named in the preceding article, which my executor is hereby directed to pay over to said Burgess for the purpose, to be applied by said Alexander Burgess at his discretion, to commemorate in Maine the name, virtues, and exalted character of his noble brother, the late Bishop George Burgess, of the Diocese of Maine, in such manner as he thinks would have been in accordance with the desire of the good Bishop."

5. "All the rest and residue of my property of every nature I devise and bequeath, in equal shares, to my wife Lizzie W. Stevens, Alexander Burgess aforesaid, Arthur M. Benson, Fred. W. Chadbourne, Leonard J. Thomas, and Orient H. Carpenter, of Mount Desert, and to"—

In testimony whereof, etc., February 21, 1867.

*Josiah H. Drummond,* solicitor for complainant.

*Bradbury & Bradbury,* for L. J. Thomas.

*Howard & Cleaves,* for Alex. Burgess and others.

WALTON, J.   To the several inquiries propounded in the plaintiff's bill we answer:

1. That the widow is entitled to the income of one-third of the Ring farm. The third clause of her husband's will gives it to her, and there is nothing in any other clause of the will or codicil which nullifies the gift.

2. That the administratrix is not required nor authorized to expend the funds of the estate, which would otherwise go to the residuary legatees, for the purpose of carrying on or improving the Ring farm, or in attempting to obtain productive income from the same.

3. That, in the present condition of the estate, the personal assets being apparently amply sufficient to meet all the calls in the will, the court declines to give the administratrix authority to sell the Ring farm, without the consent of the other residuary legatees; and the court is of opinion that she cannot sell it without such authority or consent.

4. That the bequest of $3,500 to the Rev. Alexander Burgess is payable presently, or as soon as he is qualified to receive it.

5. That the administratrix is not authorized under the third clause of the codicil, nor under any other clause of the codicil or will, to provide out of the general funds of the estate for the payment of the future taxes, repairs, and insurance, on the real estate devised in trust by the third clause of the codicil, or for any part of the same, while it is occupied by the widow for her own use and benefit, as *cestui que trust* or beneficiary. It is clear that the testator did not intend to charge his estate with such an incumbrance, for he expressly revoked that clause of his will in which such a provision was made. We think the court would not be justified in inserting in the testator's will by construction what he expressly expunged. The court, therefore, declines to authorize any sum to be set apart for these purposes.

6. That no part of such charges can be required to be borne by the trust to which the proceeds of the said real estate are eventually to be devoted. While the widow occupies as beneficiary she must pay the taxes and keep the premises in repair at her own expense; and there seems to be no doubt that her share of her hus-

band's estate under the will, will furnish her with means amply sufficient to enable her to do so without inconvenience.

7. That the Rev. Alexander Burgess will not be authorized to receive the $3,500 bequeathed to him in trust until he has given the bond required of testamentary trustees by the laws of this State. R. S., c. 68, § 1.

8. That the second clause of the codicil is void, for incompleteness and uncertainty.

9. That under the third clause of the will the widow is entitled to one-third of the gross amount of the personal property of which her husband died possessed; that she is not limited to one-third of what will remain after payment of the debts and charges of administration. She is entitled to one-third of the goods and chattels, and to one-third of what shall be realized from the rights and credits. *Bardwell* v. *Bardwell*, 10 Pick. 17.

Such, in our judgment, is the true construction of the will, and the parties are entitled to a decree accordingly.

In our judgment this is not a case where either party should recover costs. *Bill sustained. Decree to be entered as stated in the opinion. No costs for either party.*

APPLETON, C. J.; CUTTING, DICKERSON, and DANFORTH, JJ., concurred.